Our next case this morning is Jackson v. Curry, Case No. 17-1898. Mr. Kivitz, you're all up and ready here. Excited, Your Honor. Go right ahead. May it please the Court. My name is Jeff Kivitz, and I represent the defendants, appellants, Peoria Police Detective Shawn Curry, and Keith McDaniel. This appeal is about how the defendants were deprived fair consideration of a qualified immunity defense to plaintiff's course confession claim when the district court refused to review a videotape of plaintiff's murder interrogation that was attached to our motion to dismiss. Illinois statute mandates that if you are going to interview a murder suspect, it has to be video recorded. Otherwise, any statement obtained from the suspect will be inadmissible. This requirement helps protect not only criminal suspects from illegal tactics, but also police officers from exaggerated and fabricated claims of misconduct. Mandated videotaping fits perfectly within the doctrine of qualified immunity, which is supposed to protect police officers from the substantial burdens and anxieties of litigation. And the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage of litigation, including on a motion to dismiss. When there is a videotape that is critical to plaintiff's course confession claim because it shows exactly what occurred in the interrogation, when it's referred to in plaintiff's complaint, when the video is reviewed at length by the Illinois appellate court and the lower trial court, and there's no dispute as to the authenticity or completeness of the video, this court is not bound to accept plaintiff's characterization of the videotape in the complaint, but rather can independently review the video and make its own determination of what occurred during the interrogation in order to determine whether the defendants violated any clearly established law. Right, but that's discretionary. The judge here specifically declined to review the videotape, and she's not required to go outside the pleadings. She can if there's something that's fairly explicitly referenced in the pleadings and fairly within judicial notice or other permissible rules, but she declined to here and confined herself to the pleadings because it was a 12B6 motion that the qualified immunity defense was raised, and the complaint pleads that the defendant was impaired at the time of the interrogation by drug and alcohol use. That is all correct, except that the standard review for this court is de novo on a motion to dismiss, and that's based upon Federal Rule of Civil Procedure 10C, principles of qualified immunity, as well as Scott versus Harris, which it's well settled in this circuit that a video that is attached to a motion to dismiss, which is considered part of the pleadings when it's referred to in the complaint and central to the claims, which it is here. This is consistent with principles of qualified immunity requiring the earliest resolution of the claims in conjunction with the Supreme Court's decision in Scott versus Harris. Well, Scott was a summary judgment case. That's correct, and Scott didn't recognize at what point in time it was in the litigation, but rather it focused its review on whether or not courts should review a videotape when it's there at the qualified immunity stage. But that interpretation would really come up with a fact conclusion, wouldn't it, about whether or not there was coercion and whether or not there was going to the whole issue that she wasn't willing to go in at that point, saying this is a, you know, we're talking about qualified immunity, and that's why they have the preliminary hearing on that, but if there's a question remaining, it has to be determined that you don't get qualified immunity. They may win anyway, but it would go back and have the whole trial on that, or at least a summary judgment. The video eliminates any factual dispute, and in Scott, the court did not have any issue in exercising jurisdiction when the parties disputed what happened in a high-speed car chase because there was a dash cam video that had not been doctored or altered in any way, and the court could decide for itself whether the officers were entitled to qualified immunity based on the contents of the video. Right. In that case, the video turned what might have been a factual dispute into a legal question because it conclusively refuted everything that the person who had been involved in the chase there had said about the chase. I don't think that this case is similar because a videotape is not going to conclusively show unconstitutional impairment. There's a lot that would have to go into that kind of determination. Well, you have to determine whether or not the officers are entitled to qualified immunity based on the lens through what a reasonable officer would see, and what is blatantly contradicted by the video from plaintiff's complaint is whether he was highly intoxicated, so intoxicated to the extent that they shouldn't have even proceeded forward with the interrogation. What's also blatantly contradicted by the video is whether he was so psychologically coerced to the point that he passed out. And what also is blatantly contradicted by the video is whether there are false promises of leniency. Those major three things are all clear on the videotape, and this court should exercise its jurisdiction. The video will show what tactics were used during the course of the interrogation and is conclusive on those issues, but it's not conclusive on the question of his impairment by drugs and alcohol. And we do know that, and it's undisputed, it was alleged, it's apparently just undisputed that he not only collapsed but was unconscious and when he was revived was vomiting and then was taken to the hospital at the conclusion of this interview. So there's significant evidence of impairment in that. Well, and the video disputes almost the entirety of all those characterizations, and you have to remember you're looking at this through the... The way that it's referred to in the complaint makes it appear that due to the interrogation tactics, he passed out as a result of that. He passed out 38 minutes after the officers left. It's evidence of physical impairment from drugs and alcohol. I'm setting aside the interrogation tactics, which is a separate issue. The video will show what they did and didn't do as a matter of interrogation tactics and whether it was coercive in that sense. But if he's impaired, and that's part of this claim, so that he could not voluntarily give a confession, that's another matter and that's part of this suit, and the video won't be conclusive on that. When you're looking at qualified immunity and you're determining through the officer's eyes whether or not he reasonably believed that the person was so highly intoxicated that he couldn't move forward on with the interrogation, that that is blatantly contradicted in the video. He sits there, he seems to be coherent, he's engaged, he talks through the answers and questions, and no reasonable officer would believe that he's so highly intoxicated that they shouldn't move forward with the interrogation. Well, we don't know what he was doing before and during the arrest and what the officers knew based on their interactions with him at that time. The time period of the interrogation is not exclusive here. There's no allegation that any other interrogation tactics or questions occurred outside of the- No, I'm not talking about a separate interrogation. I'm talking about what information they had about his level of impairment, if any, before the interrogation started. We don't know any of that. We don't have any medical records that would tend to show how high or drunk he was. We just don't know the answers to those questions based on the stage of this case. Perhaps you win this on summary judgment, but we're on 12B6. Even on 12B6, when you look at the video and you look at it through the officer's eyes, there is no indication from a reasonable perspective, from a reasonable officer, that they shouldn't continue forward with the interrogation based upon how they viewed this particular suspect at the time. I see that I've wasted all of my time. I'll save any rebuttal for later. Thank you. Thank you. Mr. Art. Good morning, Your Honors, and may it please the Court. My name is Stephen Art, and I represent Daniel Jackson. The Illinois Appellate Court vacated Jackson's wrongful conviction after reviewing the video at issue in this appeal and concluding that it showed an obviously coarse confession rife with illegal tactics. The video strongly supports- Actually, they reversed because of a lack of probable cause for the arrest, and the interrogation flowed from that. Right. They did not make a finding on coercion. That was the concurring opinion. Right. One judge. Right. So I believe the majority opinion agreed with the concurring opinion's analysis of the video. The point- Where would that be? I believe it's at the end of the authoring judge's opinion where he says the issue of coercion is not properly before us, but I fully agree with my concurring colleagues. Okay. Not properly before us. Let's not overspend this. And it's conceded, and we're not suggesting there's some sort of issue preclusion here. The point is that the fact that the two judges of the Illinois Appellate Court could view this piece of extrinsic evidence and draw a conclusion about what it showed that is exactly opposite what appellants here say it shows, shows that there's a factual dispute here, and there's a factual dispute about what the video itself shows, both with respect to intoxication, as Judge Sykes mentioned, and with respect to tactics. Of course, the video will show what happened during the interrogation, but, for example, the appellants in this case say there's no evidence of a false promise of leniency on that videotape. That's not true at all. The videotape's packed with evidence of false promises of leniency. They tell Daniel Jackson during this interrogation that if he admits to doing it in self-defense, he'll walk free. McDaniel on the interrogation tape at about an hour and five seconds says, quote, our goal is to see you walking on the street a free man. The appellants may dispute that characterization, but that dispute is not an issue that's within this court's appellate jurisdiction, and it's not an issue for consideration on a 12B6 motion. If that's all there were to this claim, then we could decide this as a matter of law. If all we had was the videotape of what tactics were used, then we would be presented with a question of law under Scott and Plumhoff. It takes us outside of Stinson, and we could resolve the qualified immunity claim as a matter of law at this stage. But we've got this issue of impairment, and these defendant officers, at least two of them, right, were involved in the arrest as well as the interrogation? Well, they were certainly closely involved in the arrest. The fact of the matter is not in the record all of the evidence about intoxication that you would need to properly present the case. And I want to push back a little bit on the idea that you could decide this if it was only tactics at issue. Perhaps at summary judgment, where the question is whether there's a genuine dispute of fact under Rule 56, you could consider, as the Supreme Court did in Scott, a video and ask, does that video objectively contradict an issue of fact the plaintiff is trying to raise? I don't think that you can do that with all videos. I don't think there's something magical about a video in all cases because the type of claim at issue in this case, whether coercive tactics were used in a two-hour long interaction, is much different than the type of claim at issue in Scott, where the plaintiff was trying to raise an issue of fact and said, there were no cars on the road and I never swerved at any moment. And the Supreme Court said, look at this video. There's cars on the road and you're swerving all around. Right, but the videotape of the interrogation here resolves any factual dispute about what happened during the interrogation. What was said by whom, when, and what the responses were. I mean, you can't argue with that. And so what it tees up is a pure question of law about whether the tactics were unconstitutional. And so even on 12b-6, assuming the district, assuming the videotape is properly considered at a 12b-6, which it probably is, even if there's not a mandatory duty to consider it, it could conclusively resolve this claim, but for the question of his impairment. Right, and I think on the question of impairment, the video itself doesn't answer all questions about impairment in the interrogation, because it's just one view of the event. There's, of course, the things that went on ahead of time. Did the officers who were conducting the interrogation learn that when he had been picked up, he had been picked up at a party where everybody was doing drugs and was intoxicated? Could they see in his eyes that he was completely blitzed? Could they smell the marijuana and the two cups of whiskey that he had had? I don't think those things are clearly resolved by the videotape, and I think further discovery is needed. But I also don't think that the issue of tactics is resolved, and I think that that's demonstrated by the fact that different people have reached different factual conclusions about the same videotape. Not factual conclusions, different legal conclusions about the constitutionality of these tactics. That's a legal determination, and judges disagree about that sort of thing all the time. Well, I won't push it further then, but I think that on the issue of intoxication, it's critically important to this interrogation. And I don't want to distance myself from the video too much, because I think it's going to strongly support Daniel's claims at summary judgment and at trial. Not only are there false promises of leniency, but there are tactics. This Court has said repeatedly that when police conduct influences a rational person who is innocent to choose between two untenable options and choose a false confession, that leads to an involuntary confession. Well, right, and the tactics may result in different legal conclusions depending upon the degree of impairment of the subject. Absolutely. Because it's a totality of the circumstances test, which is inherently flexible. Indeed, it's inherently flexible. But I want to stress that in this case, there are two tactics that are used that each by themselves this Court has said are prohibited tactics. It's what the Supreme Court says that's important. Well, I think that for qualified immunity, what the Supreme Court says is absolutely important, and I think that defined at the appropriate level of generality, you know, it probably is, was a reasonable officer on notice given the totality of circumstances, whether the tactics and susceptibilities led to an involuntary confession. But this Court's cases are also important for putting officers on notice of what sorts of conduct during an interrogation are illegal. And false promises of leniency, this Court has said in the Sorenberger case and in others, are off limits, and so is presenting a choice that would make an innocent person choose the confession. And I would submit that that absolutely happened in this case. When the defendants said to Daniel Jackson, we've got you now. You're a black man. No matter what happens in this interrogation or your criminal trial, you're going to be convicted based on the color of your skin. And therefore, you might as well confess, throw yourselves at our mercy, and we will try to help you. So it sort of combines with the false promise of leniency to put a young man who is severely intoxicated in an untenable position, where he says, gosh, I better submit to these interrogators. African-American officer making that speech? Yeah, and I don't think that it makes a difference, except to the extent that it makes it a more credible threat, and that threat is wholly inappropriate from our point of view. Father figure? Well, if you've interpreted the video that way, you would be interpreting it purely in appellant's favor, which would be inappropriate at the summary judgment stage, and certainly inappropriate on the pleadings. But what this officer said was, and I'm reading from the appellate court opinion, he said, and what are the stereotypes nowadays of young black men between the ages of 13 and 24? What they think we're doing? Robbing, stealing, shooting, killing, making babies, ain't taking care of babies, they ain't working, they ain't going to school, they got idle time on their hands, and they, meaning the prospective jurors, they are getting tired of that S-H-I-T. So now you think, okay, you're going to get a jury of your peers, and I love that word, a jury of your peers, because when you look over, you ain't going to see not one person that looks like you acts like you. So now we've got stereotypes, we've got a jury of not your peers that's going to judge you, and we've got you not telling. Explain your actions and how you felt at the time the threat was presented to you. Notice how I said that, how the threat was presented to you and how you handled it. They're telling him, confess to self-defense because you're getting convicted no matter what because you're a black kid, and that's antithetical to our criminal justice system. These people represent the criminal justice system in the interrogation, and the tactic there has been ruled by this court to be exactly the kind of false choice that you can't present to an innocent person. That's considered at a very high level of generality. I haven't seen anything like this before. Well, so I think that there's a point to be made that there's a difference between the tactics used and the subject matter employed when that tactic is deployed, and I think that that, for purposes of false confession claims and defining things at the right level of generality, is key because we can show cases that say this sort of tactic, putting pressure on an individual so that they would choose false confession over the untenable choice on the other side, that's prohibited, but you don't need to show that the subject matter, whether that's Sorenberger, I'm going to take your kids away, this case, you're a black man so you're definitely getting convicted. That level of specificity isn't needed, and I think that it allows a situation  without requiring an exactly analogous case. Thank you, Your Honors. Thank you. Mr. Kibitz, you've got a minute left. Your Honor, I just want to quickly direct you to U.S. v. Turo, which holds that intoxication alone does not show involuntariness, and People v. Moon, which illustrate, and we've cited in our brief, that you have to be so grossly intoxicated that you cannot even give a waiver of your rights, and that is not what's depicted in the video. With regard to Mr. Art's comments about the Illinois appellate court, we recognize that two members of that panel found Detective McDaniel's comments to be blatantly coercive, but the other member of that panel didn't have any issue with the interrogation tactics used whatsoever, and neither did the trial court who permitted the video interrogation to go before the jury, and I present to you that that clearly shows that any tactics used by the police officers were not clearly established. They did not violate any of plaintiff's rights. Unless there are any additional questions, I ask that the motion to dismiss be granted. Thank you. Thank you. The case is taken under advisement.